# Third District Court of Appeal

## State of Florida

Opinion filed October 14, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-3046
Lower Tribunal No. 14-9731
_____


**Reid Richards,**
Appellant,

vs.

**Jacqueline Gonzalez,**
Appellee.


An Appeal from the Circuit Court for Miami Dade County, Joseph I. Davis, Jr., Judge.

Reid Richards, in proper person.

Jacqueline Gonzalez, in proper person.


Before SUAREZ, C.J., and SALTER and SCALES, JJ.

SALTER, J.

Reid Richards appeals a final judgment for protection against stalking entered in favor of the appellee, Jacqueline Gonzalez, who lives (with her three

children) next door to Mr. Richards and his spouse. Finding Ms. Gonzalez's proof insufficient under the applicable statutes and precedent, we reverse the final judgment and vacate the injunction.

Facts

The parties have been next door neighbors in Pinecrest for many years. Each has a history of alleging incidents of harassment and unneighborly behavior against the other. Although each has obtained temporary ex parte civil injunctions for protection against the other under the stalking statute, section 784.0485, Florida Statutes (2014), their petitions for final judgments of injunction after a hearing have, in prior incidents, been dismissed for failure to appear or upon a finding of no just cause.

The petition in the present case was filed in April 2014. Ms. Gonzalez and a court clerk provided to assist petitioners in such cases completed a form petition which "checked the box" in the spaces provided in paragraph 13 to allege that Mr. Richards had: committed stalking; previously threatened, harassed, stalked, cyberstalked, or physically abused her; threatened to harm her or family members; used, or threatened to use, any weapons such as guns or knives against her; a criminal history involving violence or the threat of violence; and destroyed personal property, including, but not limited to, telephones or other communication equipment, clothing, or other items belonging to her.

2

The description of "specific incidents of stalking," paragraph 14 of the petition, was a typewritten, single-page attachment compiled by the court staffer based on her interview with Ms. Gonzalez.[1] The attachment alleged a recent incident in which Ms. Gonzalez was in her vehicle with her fifteen year-old son approaching her home when Mr. Richards "jumped out in front of her vehicle in attempt to harass [her]." She alleged that she stopped the vehicle in front of her property and called the police, at which point Mr. Richards "threw a full water bottle at [her] vehicle, and then got into his vehicle and sped off."

In a March 2014 incident, Ms. Gonzalez alleged that, while she was entertaining family members in her backyard, Mr. Richards turned on his pressure cleaner, climbed on the roof of his shed, began to look at Ms. Gonzalez and her guests, and began laughing. Although Ms. Gonzalez called the police, she alleged that the police told her that there was nothing they could do.

In a February 2014 incident, Ms. Gonzalez alleged that Mr. Richards threw garbage over her property line "and was [waving] his arms at [her], laughing and taunting her." She alleged that this had occurred the day after a six-month stay away order applicable to his probation had expired. According to the Miami-Dade Clerk's case information system, Mr. Richards' stay away order was entered in a

---

[1] Section 784.0485(2)(c), Florida Statutes (2014), specifically directs the court clerk to assist petitioners in the completion of their forms. In doing so, the clerk's office staff are merely recording information supplied by the self-represented petitioner.

misdemeanor battery case that was part of a deferred prosecution agreement with adjudication withheld, and he complied with all of the terms of that agreement.

Finally, Ms. Gonzalez alleged that Mr. Richards had been harassing and stalking her family since 2005 in a series of incidents, but her allegation acknowledged that prior ex parte temporary restraining orders expired and the underlying cases were dismissed.

In the present case, the trial court issued an ex parte temporary injunction and the case was set for hearing. After an initial dismissal (later vacated), continuances and extensions of the temporary injunction pending the final hearing, the trial court heard the case in November 2014. In the interim, Ms. Gonzalez was represented by counsel for several months, but her attorney was permitted to withdraw based upon his representation that he had been discharged.

Despite the careful attention and unlimited patience of the trial judge during the hearing, the parties used the final hearing to interrupt one another, accuse each other of acts and omissions outside the sworn petition, and express their high levels of frustration with each other. Brief testimony regarding the alleged "water bottle" incident was provided by Ms. Gonzalez, her son, Mr. Richards, and his spouse. Ms. Gonzalez offered what she said would be a video of the incident, but when viewed by the trial judge it turned out to be a video of Ms. Gonzalez making a 911 call to the Pinecrest police.

At the close of the hearing, the trial court entered the "final judgment of injunction for protection against stalking violence" against Mr. Richards, with a term of four years. In addition to the form judgment's usual terms prohibiting contact, the injunction prohibited Mr. Richards from coming within twenty feet of Ms. Gonzalez's automobile or within twenty feet of her residence next door to his. This appeal followed. As they did below, the parties are representing themselves in this appeal.

Analysis

Stalking is the willful, malicious, and repeated following, harassing, or cyberstalking of another person. § 784.048(2), Fla. Stat. (2014). "'Harass' means to engage in a course of conduct directed at a { "pageset": "S06" specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a); see also § 784.048(1)(b) (defining "'[c]ourse of conduct'" as "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose").

"Courts apply a reasonable person standard, not a subjective standard, to determine whether an incident causes substantial emotional distress." Touhey v. Seda, 133 So. 3d 1203, 1204 (Fla. 2d DCA 2014) (internal quotation marks omitted). In order to define "repeated following, harassing, or cyberstalking," guidance can be derived from section 784.046, Florida Statutes (2014), which

defines repeat violence as "two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner or the petitioner's immediate family member." § 784.046(1)(b); Wyandt v. Voccio, 148 So. 3d 543, 544 (Fla. 2d DCA 2014). "Each incident of stalking must be proven by competent, substantial evidence to support an injunction against stalking." Touhey, 133 So. 3d at 1204 (emphasis provided).

There is a substantial disparity between the testimony at trial and the allegations in Ms. Gonzalez's petition. There was no proof that Mr. Richards used, or threatened to use, any weapons such as guns or knives against Ms. Gonzalez. There was no proof that Mr. Richards destroyed "personal property, including, but not limited to, telephones or other communication equipment, clothing, or other items" belonging to Ms. Gonzalez.

Regarding the alleged "water bottle" incident, Ms. Gonzalez's fifteen year-old son testified that he thought Mr. Richards threw a plastic water bottle against the car door after Ms. Gonzalez had honked at Mr. Richards for approaching the car "out of nowhere" (but in the street outside his home and car). The trial judge queried the son:

> Court:  -- are you able to tell me whether or not [the water bottle] was launched by Mr. Richards intentionally or accidentally, or do you know?

6

Witness:  I don't know.  I don't really know.  I'm almost positive it was intentionally, though, Your Honor.

Court:  Okay.  But you're not sure?

Witness:  Not completely.

There was no reported damage to Ms. Gonzalez's car.  There was no testimony that the alleged plastic water bottle was thrown at a window of the car. No bottle was found by Ms. Gonzalez, though she testified that Mr. Richards immediately hopped in his car and sped away after the alleged incident.

Conclusion

Applying the requirements of sections 784.048 and 784.0485, Florida Statutes (2014), and the "reasonable person standard" to the conduct described at the final hearing (as opposed to the petition), we are constrained to reverse the final judgment and vacate the injunction.  We must also observe that, although the stalking statutes expressly authorize self-representation,[2] both parties' rudeness to the trial judge and the parties' constant interruption of each other were self-defeating.  If some form of consensual mediation or counselling[3] is unavailing and future petitions eventuate, the parties might consider seeking legal assistance, paid or pro bono, to focus their legal theories and presentation of evidence.

Reversed; injunction vacated.

---

[2]  § 784.0485(1)(d), Fla. Stat. (2015).

[3]  See Shocki v. Aresty, 994 So. 2d 1131, 1134 & n.3 (Fla. 3d DCA 2008).

7